REGAN,- Judge.
The plaintiffs, Mr. and Mrs. James Hughes, instituted this suit against the defendants, Sewerage and Water Board of New Orleans and the City of New Orleans, endeavoring to recover $10,000 as damages for personal injuries sustained by Mrs. Hughes as a result'of having fallen in an alleged excavation in a public sidewalk in Melpomene Street between Magazine ahd Constance Streets, on December 6, 1948, at 7:00 P. M. and $438 for médical expenses incurred by Mr. Hughes in consequence of his wife’s injuries. ' ' ''
Defendant, City of New Orleans, pleaded the exceptions of no cause or right, of action which were overruled. , Both defendants then answered denying that they were guilty of any negligence - in the premises and, in the alternative, pleaded the contributor negligence of Mrs. Hughes.
From a judgment in favor of the defendants dismissing plaintiffs’ suit, they have prosecuted this appeal.
Plaintiffs contend that on December 6, 1948, at about 7:00 p... m., Mrs. James Hughes was walking along the sidewalk of Melpomene Street when she suddenly fell into' an excavation three feet wide and two feet deep, which the Sewerage and Water Board had created when repairing sewerage facilities; that there were no lights to illuminate the excavation and no barriers to protect and warn pedestrians of the hazard. Plaintiffs insist that the ‘City of New Orleans had either actual or constructive notice of the defective condition ' of the sidewalk, by virtue of the Mayor being president of the Sewerage and Water Board; that the city was guilty' of negligence in - failing to 'determine that the excavation was promptly filled and to provide the necessary caution' lights and' protective barriers. Plaintiffs likewise contend that the Sewerage and Water'Board was guilty of negligence'in that it initially caused :the excavation-to-'exist ahd then omitted to furnish *761 caution lights and erect barriers for the protection of pedestrians using this sidewalk.
On the other hand, the city, in resisting the demand of plaintiffs, maintains that the sidewalk was not defective and, therefore, no hazard existed which required lights' or barricades; if the sidewalk was in a defective condition, that it did not possess either actual or constructive notice thereof; alternatively, Mrs. Hughes was guilty of contributory negligence in failing to exercise reasonable and ordinary care in traversing the sidewalk.
The Sewerage and Water Board conceded that it caused an excavation to exist adj acent -to the premises designated by the municipal No. 1025 Melpomene Street, on or about December 2, 1948, for the purpose of lowering a drain .pipe in a driveway leading to a public alley; the initial excavation was approximately three feet in width and two feet in depth, but the work was commenced and completed on the same day. It elucidates that after lowering the drain pipe as requested by an agent of the owner of the premises, the excavation was backfilled with earth removed therefrom and tamped well therein until it reached the grade of the sidewalk; that it was backfilled in conformity with standard methods employed by the Sewerage and Water Board over a long period of years;- therefore, it was safé and pedestrians, who exercised ordinary care, were-'"not exposed to any danger. The Sewerage and Water Board also conceded that there were no lights or barriers erected around this area, inasmuch as they were unnecessary as the completed work created no hazard. In the alternative, it pleaded the contributory negligence of Mrs. Hughes in that she did not exércise ordinary care in walking upon the sidewalk.
There were no eyewitnesses to the accident, but in order to lend substantiation to their contention, the plaintiffs produced, in addition to themselves, three witnesses, none of whom testified that an excavation three feet wide and two feet in depth existed in the sidewalk when the accident occurred. On the contrary, they testified, in substance, that between December 2, 1948, when the' excavation, was made and backfilled and December, 6, 1948, the date on which Mrs. Hughes was- injured, a slight concave depression had deyeloped therein of approximately two to four inches, beginning at the perimeter and sloping towards the center.
Mrs. ’ Hughes related that she was walking, along, the sidewalk of .Melppmene Street and. “when I reached this place I fell, that’s about all I can say”; there were no lights of barriers surrounding the excavation; that although her sister was . waiting for her a short distance from where she .fell,• she did not observe the incident.
James Hughes testified that on .December 7, 1948, the day following the occurrence, he visited the scene of the accident -and that it looked “to me-(like) a rut * * *. I would, say at least four inches deep; the mud, in the hole was gooey. * *
The'City of New, Orleans produced as 'a witness, John Quártaná, a, field inspector employed in the City Engineer’s office, who stated that he is in charge of issuing permits fór drivewáys, ‘servicé cuts and investigating sidewalk complaints, but that he did not receive any notice involving the' sidewalk wherein the accident occurred:
The Sewerage and Water Boatd produced eight witnesses, three of whom were employed by Joseph Petrie, the plumbing contractor who requested and paid the Sewerage and Water Board to perform this work. 'They uniformly asserted that the-excavation was created, filled and tamped to the level of the sidewalk on December 2, 1948. ■' ' ' ' '
The other five witnesses were all employees of the Sewerage and Water Board. They related that the excavation was back-filled on December 2, 1948, the same day of its creation, and the grade was level with the adjoining pavement. F. McNeil, Jr., the Sewerage and Water Board’s maintenance foreman, elucidated more pertinently in this connection by asserting:
*762 “Yes, and we finished that and back-filled it, threw in about six inches of mud, tamped it, * * * tamped it again up to the top and after we took small particles of concrete, tamped it and put it in with mud so it would be binding together with the concrete and after that we tamped it again * * * and left it well up to grade * * *. Even with the sidewalk and walkable.”
From the foregoing testimony it is very obvious that if any degree of negligence existed, the City of New Orleans was guilty of passive negligence and the Sewerage and Water Board was guilty of active negligence in view of the fact that the Sewerage and Water Board actually performed the .work.
However, a careful analysis of the evidence, considered from the plaintiffs’ most favorable aspect, reveals that the excavation was backfilled before the day of the accident and that, if a concavity, without sharp edges, existed therein, it was not,in excess of two or three inches beginning at the perimeter thereof and sloping towards the center. Predicated upon these established facts, our jurisprudence is embellished with innumerable cases decided by both the Supreme and appellate courts of this state to the effect that the defect herein complained of in the sidewalk affords no actionable negligence.
In the relatively, recent case of White v. City of Alexandria, 1949, 216 La. 308, 43 So.2d 618, 620, the Supreme Court, after citing numerous decisions forming the pattern of the existing jurisprudence of this state encompassing sidewalk accidents, set forth composite legal principles emanating therefrom which are appropriate herein in determining the liability of both municipal corporations:
“From this jurisprudence there have evolved certain legal principles which are to be considered in determining the instant controversy. Thus, a municipality is not an insurer of the safety of pedestrians. It must keep the sidewalks reasonably safe, but the maintaining of them in perfect condition is not necessary. To render it liable in damages the defect, complained of must be dangerous or calculated to cause injury. Defects in sidewalks that are not in the nature of traps, or from which danger cannot reasonably be anticipated, provide no actionable negligence. Such 'ways of passage are intended for public use, of course, and a pedestrian is entitled to assume that' they are not dangerous. Further,, he is not required to constantly observe the surface of the walk or to exercise the care that would be necessary in traversing a jungle. However, he ■ cannot be completely oblivious of its condition; -he must exercise ordinary care when using it, having in mind the well recognized fact that throughout every city of any size in this state there exist irregularities in the walkways brought about by natural causes such as rains, expansion, soil erosion and tree roots.
“For determining what is a dangerous defect in a sidewalk (that which renders the municipality responsible in damages to.a pedestrian injured as a consequence thereof) there is no fixed rule; the facts and surrounding circumstances of each particular case control. The test usually applied, however, requires an answer to the question of whether or not the walk was maintained in a reasonably safe condition for persons exercising ordinary care and prudence.”
For the reasons assigned the judgment appealed from is affirmed. ■; •
Affirmed.