VICTORY, J.
hWe granted a writ in this personal injury case to determine whether the Village of Moreauville (“Moreauville”) breached its duty to keep its sidewalk in a reasonably safe condition. The specific issue is whether a one-and-one-quarter to. one- and-one-half inch deviation created an unreasonable risk of harm. After review of the record and the applicable law, we find Moreauville’s failure to repair the deviation did not amount to a breach of its duty to keep its sidewalk in a reasonably safe condition. Therefore, we reverse the judgments of the lower courts and render judgment in favor of the defendant.
FACTS AND PROCEDURAL HISTORY
On April 19, 2008, Arlene Chambers (“Chambers”) and a friend, Annette Bowman (“Bowman”), were walking from a former co-worker’s funeral at Simpson Baptist Church to Chambers’ home. Although they were driven to the church by a friend, they decided to walk the seven-tenths of a mile to Chambers’ home, where Bowman’s car was parked. During most of this walk, Bowman walked slightly in front of Chambers on the left portion of the sidewalk, while Chambers walked on the right portion of the sidewalk. When adjacent to 234 | gTassin Street, Chambers noticed one panel of the sidewalk sloped down and the adjacent panel sloped upward and began navigating these slopes. However, she did not see a one-and-one-quarter to one-and-one-half inch ledge at the top of the upward slope on the right edge of the sidewalk, and she tripped and fell when her boot caught the ledge.[1] As a result, Chambers sustained a comminuted fracture of the radius of her right arm.
Chambers sued Moreauville claiming damages for injuries sustained in the fall. The claim was tried as a bench trial on August 4, 2010, resulting in a judgment in favor of the plaintiff, finding Moreauville *596 one hundred percent at fault, and assessing damages in the amount of $S49,214.39.[2]
At trial, plaintiffs expert, Philip Beard (“Beard”), a consulting civil and structural engineer, testified that the ledge is a tripping hazard because it is a vertical change in elevation exceeding one-half inch. He further testified that the decline and incline immediately preceding the ledge make the ledge even more dangerous. He explained that normally, when people are walking on a level surface their body remains vertical, and as they step their foot swings in a small arch, which is never more than one-half inch to one inch above the surface of the sidewalk. However, when there is a slope before they get to a ledge, their body has changed to an upward posture and their steps are shorter so their foot is closer to the ledge, making the ledge more dangerous. Defendant’s expert, J. Ronald Landreneaux (“Landre-neaux”), a consulting environmental and civil engineer, testified that the sidewalk’s condition is not unreasonably dangerous. He ^concluded Chambers was aware of the poor condition of the sidewalk on this street, she acknowledged the sidewalk condition before she reached it, and safely traveled the decline. Landreneaux further opined Chambers could have walked on the smooth side of the sidewalk because Bowman was in front of her at this location. Finally Landreneaux concluded Chambers could have avoided this incident by stepping over the elevation or moving to the left and not encountering this point.
After discussing the expert testimony and case law relating to whether this defect constituted an unreasonable risk of harm, the trial judge stated in his oral reasons for judgment:
The deviation is not important to me. What is important is the cost factor and it’s important in my ruling. I cannot allow a municipality to say the cost factor will be our escape clause. But a municipality can say it would cost ... to[sic] much. I am not saying it’s a judicially imposed duty on a municipality but if you got sidewalks in your custody and guard your[sic] responsible for them not the landowners. The law is clear. They’ve got to be reasonably safe for pedestrians. The municipality has to budget and prepare for this. They just got to. They can’t just let them go and then say well you got an escape clause. It’s a cross[sic] factor. We can’t fix them all over town. We’ve got to. I mean if we don’t, if a municipality can play that card every time and say the cost factor well then they ... no longer have to keep them reasonably safe. So for those reasons, I find the City of Moreauville one hundred percent at fault for the accident at issue.
On appeal to a three-judge panel, the judgment was affirmed in part and reversed in part. Chambers v. Village of Moreauville, 10-1368 (La.App. 3 Cir. 4/6/11), 60 So.3d 125. The court of appeal affirmed the portion of the trial court’s ruling which provided that the elevated differential created an unreasonable risk of harm, but it amended the trial court judgment to attribute ten percent of the fault to Chambers. Id. at 132-33. Additionally, the court of appeal reversed the portion of the trial court judgment awarding Chambers damages for loss of future earnings. Id. at 134.
*597 |4We granted Moreauville’s writ application to consider whether the one-and-one-quarter to one-and-one-half inch sidewalk deviation created an unreasonable risk of harm. Chambers v. Village of Moreauville, 11-0898 (La.9/2/11), 68 So.3d 532.
LAW AND DISCUSSION
Generally, a court of appeal may not set aside a trial court’s or jury’s finding of fact in absence of “manifest error” or unless it is “clearly wrong.” Evans v. Lungrin, 97-0541, (La.2/6/98), 708 So.2d 731, 735 (citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989)). However, if a legal error interdicts the fact finding process, the manifest error standard of review is no longer applicable, and, if the record is otherwise complete, the appellate court should make an independent de novo review of the record and determine which party should prevail by a preponderance of evidence. Evans, supra at 735 (citing Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 747 rev’d in part, on other grounds, 96-3028 (La.7/1/97), 696 So.2d 569, reh’g denied, 96-3028 (La.9/19/97), 698 So.2d 1388); McLean v. Hunter, 495 So.2d 1298, 1303 (La.1986). There is a legal error when a trial court applies incorrect principles of law and these errors are prejudicial. Evans, supra at 735. Legal errors are prejudicial when they deprive a party of substantial rights and materially affect the outcome. Evans, supra at 735. When a prejudicial error of law skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court must, if it can, render judgment on the record by applying the correct law and determining the essential material facts de novo. Evans, supra at 735 (citing Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993)).
As explained herein, we find the trial court applied incorrect principles of law because it failed to consider a necessary component of the risk-utility balancing test in determining whether the instant deviation created an unreasonable |firisk of harm. Specifically, the trial judge erred when he expressly declined to consider cost, an indispensable component of the risk-utility balancing test. Additionally, we find this error prejudicial because it skewed the trial court’s finding of a material issue of fact, that the condition of the sidewalk created an unreasonable risk of harm. Accordingly, this Court will make an independent de novo review of the record and address whether the trial court erred in finding the condition of the sidewalk created an unreasonable risk of harm.
Under La. R.S. 9:2800, in order to prove a public entity is liable for damages caused by a thing, the plaintiff must establish: (1) custody or ownership of the defective thing by the public entity; (2) the defect created an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation. Lasyone v. Kansas City Southern R.R., 00-2628 (La.4/3/01), 786 So.2d 682, 690; Dupree v. City of New Orleans, 1999-3651 (La.8/31/00), 765 So.2d 1002, 1008. Here, the specific issue is whether the instant sidewalk deviation created an unreasonable risk of harm.
Courts have adopted a risk-utility balancing test to determine whether a condition is unreasonably dangerous, wherein the trier of fact balances the gravity and the risk of harm against the individual and societal utility and the cost and feasibility of repair. Pryor v. Iberia Parish School Bd., 10-1683 (La.3/15/11), 60 So.3d 594, 596 (citing Reed v. Wal-Mart Stores, Inc., 97- *598 1174 (La.3/4/98), 708 So.2d 362, 365; Boyle v. Board of Sup’rs, Louisiana State University, 96-1158 (La.1/14/97), 685 So.2d 1080, 1083). This Court has applied the risk-utility balancing test to determine whether a defect in a sidewalk creates an unreasonable risk of harm, and determined there is no fixed rule in determining whether a defect in a sidewalk is unreasonably dangerous. Boyle, supra at 1082 (citing White v. City of Alexandria, 216 La. 308, 43 So.2d 618, 620 (1949)). Instead, the facts and ^surrounding circumstances of each case control. Id. However, the test applied requires the consideration of whether or not the sidewalk was maintained in a reasonably safe condition for persons exercising ordinary care and prudence. Id. Therefore, although municipalities have a duty to maintain its sidewalks in a reasonably safe condition, they are not insurers of the safety of pedestrians and are not required to maintain sidewalks in perfect condition. Id. To be liable for damages caused by a defect, the defect must be dangerous or calculated to cause injury. Id. Moreover, when traveling down a sidewalk a pedestrian is not required to exercise the care required in traversing a jungle, but he must exercise ordinary care, keeping in mind that irregularities exist in sidewalks. Id.
Regarding the risk of harm,[3] in Boyle, we considered the following factors in determining that the risk of injury created by the sidewalk deviation was low: the depression was relatively small; it developed due to Louisiana climate and settling Louisiana soil; it existed for several years; it was located in a high traffic area; and the plaintiff was the only person ever reported to have fallen there. 685 So.2d at 1083. These same factors are equally relevant in this sidewalk case.
The size of a deviation is a necessary consideration in determining the risk of harm created by a sidewalk defect. We find that as in other cases involving similar sidewalk deviations, the one-and-one-quarter to one-and-one-half inch ledge here is relatively small. In Boyle, this Court held that a sidewalk depression that was one inch in one corner of the sidewalk and one-half inch in the other corner did not present an unreasonable danger. Id. at 1082-84. Additionally, injfWhite, this Court held a one-and-one-half inch to two inch deviation in a sidewalk was maintained in a reasonably safe condition for persons exercising ordinary care and prudence. 43 So.2d at 620. Further, Louisiana jurisprudence has consistently held that a one-and-one half inch deviation does not generally present an unreasonable risk of harm. Shavers v. City of Baton Rouge/Parish of East Baton Rouge, 00-1682 (La.App. 1 Cir. 9/28/01), 807 So.2d 883, (writ denied) 01-2848 (La.1/4/02), 805 So.2d 207 (affirmed trial court ruling that a one-half to two inch raised portion of a sidewalk did not present an unreasonable risk of harm); Williams v. Leonard Chabert Medical Center, 98-1029 (La.App. 1 Cir. 9/26/99), 744 So.2d 206, (writ denied) 00-0011 (La.2/18/00), 754 So.2d 974 (a one-and-one- *599 half inch deviation in a parking lot did not create an unreasonable risk of harm); Hughes v. Sewerage & Water Bd. of City of New Orleans, 70 So.2d 760 (La.App.Orleans 1954) (affirmed trial court ruling that a three feet wide and two feet deep excavation in a sidewalk did not create an unreasonable risk of harm); Jones v. City of Baton Rouge, 191 So. 734 (La.App. 1 Cir.1939) (affirmed trial court ruling that a three to four inch depression in the sidewalk did not create an unreasonable risk of harm).
As stated above, another factor relevant to the risk of harm in a sidewalk case is the number of years the defect has existed relative to the pedestrian traffic and the number of incidents reported. In Boyle, this Court considered that the defect, which had been in existence for several years, “is in a high traffic area, and Mrs. Boyle is the only person ever reported to have fallen there” in its determination that a sidewalk deviation did not create an unreasonable risk of harm. 685 So.2d at 1083. Additionally, in White, this Court considered that the one-and-one-half to two inch sidewalk deviation had been in existence for several years and no person was injured or complained of it to the city, notwithstanding the defect being located in a semi-business district and the sidewalk was used | ^frequently, in determining that a sidewalk deviation did not create an unreasonable risk of harm. 43 So.2d at 619. In this case, the trial judge’s oral reasons for judgment reveal that the judge did not consider the amount of time the deviation had been in existence, the traffic over the particular area, and whether anyone else had ever reported falling there. In fact, the trial judge criticized Mayor Lionel Bordelon, whose house is located adjacent to the sidewalk where Chambers fell, for testifying to these factors. Here, the may- or testified that the deviation has been in existence since he moved into his house, approximately forty years before the fall. Further, both the mayor and John Gui-droz, the Public Works Superintendent for Moreauville, testified there have been no reported falls prior to the incident even though the mayor testified that roughly twenty-five pedestrians pass this area of the sidewalk daily.
In Boyle, this Court considered that the “depression had been developing due to the Louisiana climate and settling Louisiana soil” in weighing the risk of harm the sidewalk deviation created. 685 So.2d at 1083. Furthermore, in White, this Court stated a sidewalk deviation “resulted from natural causes, not by any deliberate act of the defendant” in determining the deviation did not create an unreasonable risk of harm. 43 So.2d at 620. Here, Chambers’ expert, Beard, testified that the deviation was caused by natural causes. More specifically, Beard stated that the deviation was caused by water under the sidewalk that had progressed from a nearby catch basin and which silted the sidewalk’s sand base.
Accordingly, we find the risk of harm is not great because the deviation is relatively small, there have been no reported complaints in the approximately forty years that the deviation has been in existence in spite of this area being traveled by twenty-five pedestrians a day, and the deviation was not deliberately created by the defendant.
|cAs stated earlier, the risk-utility balancing test requires balancing the gravity and the risk of harm against the individual and societal utility and the cost and feasibility of repair. Pryor, supra at 596 (citing Reed, supra at 365; Boyle, *600 supra at 1083).[4] Therefore, cost is a necessary part of the risk-utility balancing test. But, the trial judge’s reasons for judgment reveal that the judge expressly declined to consider cost, stating:
What is important is the cost factor and it’s important in my ruling. I cannot allow a municipality to say the cost factor will be our escape clause. But a municipality can say it would cost ... to[sic] much. I am not saying it’s a judicially imposed duty on a municipality but if you got sidewalks in your custody and guard your[sic] responsible for them not the landowners. The law is clear. They’ve got to be reasonably safe for pedestrians. The municipality has to budget and prepare for this. They just got to. They can’t just let them go and then say well you got an escape clause. It’s a cross[sie] factor. We can’t fix them all over town. We’ve got to. I mean if we don’t, if a municipality can play that card every time and say the cost factor well then they ... no longer have to keep them reasonably safe.
Because the cost factor is essential to the risk-utility balancing test, we find this to be legal error. This legal error was prejudicial because it skewed the trial court’s finding of a material issue of fact, i.e., that the sidewalk presented an unreasonable risk of harm. Therefore, this legal error resulted in our de novo review of this case.
As part of the cost analysis, the physical and financial inability of a municipality to maintain its things in anything more than a reasonably safe condition has been considered by this Court as a factor in determining whether such condition creates an unreasonable risk of harm. Brooks v. State ex rel. Dept. of Transp. and Development, 10-1908 (La.7/1/11), 74 So.3d 187, 193. This includes not only the cost to fix the instant deviation, but also all similar deviations. Boyle, supra at 1083.
|1ftAt trial, Beard testified that there were at least twelve areas of sidewalk in need of repair between the church and the instant condition, which the record reflects was approximately three-tenths of a mile. Beard further testified that it would cost between $500.00 and $600.00 dollars to repair the sidewalk deviation at issue. This is compounded by Beard’s testimony that there are a substantial number of sidewalks in Moreauville. Accordingly, the cost to Moreauville to fix all sidewalk deviations of one-and-one-fourth to one-and-one-half inches would apparently be substantial.
Moreover, even though the record does not reveal precisely the number of sidewalks in Moreauville or exactly how many similar deviations exist on these sidewalks, such evidence is not critical here. Instead, central to our ruling is the fact that the cost of fixing all deviations similar to the instant deviation is out of proportion to the gain in fixing such deviations because the risk of someone being seriously injured by such a small sidewalk defect is so slight. This is evident here by the fact that Chambers is the only person who has reported tripping on this defect in the approximately forty years the defect has existed. Therefore, although it may be fiscally possible for Moreauville to fix such deviations, there would be little gained in fixing them. In effect, a ruling finding the deviation creates an unreasonable risk of harm *601 would be sending a message out to the State and all of its municipalities that they are burdened with the fiscally exorbitant task of fixing all sidewalk deviations of one-and-one-half to one-and-one-quarter inches, even though the risk of someone being injured by such a defect is minimal. For the aforementioned reasons, we find the cost factor weighs heavily in favor of finding the instant deviation does not create an unreasonable risk of harm.
An additional basic principle applicable to sidewalk cases is that public entities only have a duty to keep sidewalks in a reasonably safe condition for pedestrians exercising reasonable care, keeping in mind that irregularities exist in | n sidewalks. White, supra at 620. In White, this Court considered that the sidewalk deviation was readily observable in determining the deviation was not dangerous or calculated to cause injury; there were no shrubs or trees in close proximity to it; and, a street light lit the area where the deviation was located during the night the plaintiff fell. Id. at 619. Here, we find the deviation was readily observable. Chambers testified that the sun was shining at the time of her fall. The pictures and testimony indicate there was no grass covering the deviation, and there were no trees obstructing Chambers’ view when approaching this area. Additionally, pictures and testimony reveal there was a coloring differential between the ledge and the sidewalk, making the ledge obvious to pedestrians.[5] Although Chambers testified she did not see the ledge, she testified she saw the incline and decline, which were located directly adjacent to the instant ledge. We believe because Chambers was navigating this decline and incline immediately preceding the ledge, she should have been exercising a higher standard of care while traversing the decline and incline, and therefore, she should have been alerted to the ledge.
Furthermore, the testimony revealed that during her walk from the church to the scene of the accident she had to negotiate approximately twenty-five other deviations to get to the instant deviation. Chambers testified she was aware of the general condition of the sidewalk in this area, and also had similar deviations in front of her own home, less than a half-mile from the instant condition. Nonetheless, at the time of the accident she was not looking at the sidewalk, and instead, she was looking straight ahead talking with Bowman. Given Chambers’ testimony that this was her first time traversing this particular area of the sidewalk, and she was aware of the general condition of the sidewalk, Chambers had a duty to exercise a higher standard of care. For the aforementioned reasons, we find 112Chambers’ failure to see the condition likely resulted from her failure to exercise the requisite standard of care while traversing down this particular sidewalk.
Considering the moderate gravity of the harm, the small size of the defect, the absence of complaints regarding this area of the sidewalk for the forty years the condition has been in existence, the development of the defect due to natural causes, the cost to fix all similar deviations, the high utility of the sidewalk, the overt nature of the defect, and Chambers’ failure to exercise the requisite standard of care while traversing this area of the sidewalk, we conclude that the instant deviation does not present an unreasonable risk of harm.
*602 CONCLUSION
As stated, a municipality is not an insurer of the safety of pedestrians traversing its sidewalks. Instead, it is only liable for conditions that create an unreasonable risk of harm. Here, the utility of the sidewalk is high. Additionally, it would be fiscally exorbitant to require municipalities to correct all sidewalk deviations of one-and-one-quarter to one-and-one-half inches. Further, the risk of harm created by the deviation is low; there has never been a reported complaint about the deviation in the approximately forty years it has been in existence, the area of the sidewalk is well traveled, the deviation is relatively small, and it developed due to natural causes. Additionally, the deviation was readily observable, and Chambers failed to exercise the requisite standard of care while traversing this particular area of the sidewalk. Accordingly, we find the condition does not present an unreasonable risk of harm. To hold otherwise would place an unreasonable burden on the State and its municipalities to ensure their sidewalks are free from all similar deviations of one-and-one-quarter to one-and-one-half inches.
11SDECREE
For the reasons stated herein, the judgments of the court of appeal and trial court are reversed and judgment is rendered in favor of the defendant, dismissing the plaintiffs claim against the Village of Mor-eauville with prejudice.
REVERSED AND RENDERED.
JOHNSON, Justice, dissents.
KNOLL, Justice, dissents and assigns reasons.

. Although pictures in the record reveal at the extreme outside edge of the sidewalk the ledge clearly measures one-and-one-half inches, Chambers did not trip on the part of the ledge on the extreme outside edge of the sidewalk, and therefore, it is estimated the area of the ledge Chambers tripped on was between one-and-one-quarter to one-and-one-half inches.

. The damages were categorized as follows: $46,616.17 in past medical expenses, $10,000.00 for future medical expenses, $3,617.34 in past lost wages, $54,148.00 in future lost wages, $5,050.00 in expert fees, $467.20 for medical record fees, $695.10 in court reporter fees, $620.58 in court costs, $200,000 for pain and suffering, and $25,000 for loss of enjoyment of life.

. The trial court did not consider gravity of the harm as part of its duty-risk analysis. Here, the plaintiff fractured her right arm. This exemplifies the type of injury that can be expected as a result of tripping on a defective sidewalk. In contrast to the type of harm that can result from other types of defects, such as a defective traffic light, the gravity of harm here is only moderate. While the trial court’s failure to consider the gravity of the harm can be considered "legal error,” it is hard to say that was "prejudicial” so as to require de novo review, in that it probably did not materially affect the outcome of the case because unlike costs, the moderate gravity of the harm here really does not weigh in favor or against a finding that the sidewalk was unreasonably dangerous. It is, however, a factor to be considered in our de novo review.

. The trial judge’s oral reasons for judgment are devoid of any consideration of the utility of the sidewalk. Here, the utility of the sidewalk is apparently high, as it serves a residential area that is adjacent to a school. However, like the trial court's failure to consider gravity of the harm, failure to consider the utility of the sidewalk probably did not materially affect the outcome of the case and thus did not provide the grounds for de novo review in this case.

. Notably, during the trial, Chambers testified that she could see a difference in color between the sidewalk and the ledge when shown a picture of the area of the sidewalk where she fell.