AMY, J., dissenting.
In my opinion, the standard of appellate review dictates an affirmation in this matter. Chiefly, I find no manifest error in the trial court's determination that the sidewalk did not present an unreasonable risk of harm. That conclusion is supported by the record and, in my view, is determinative in this case.
The majority opinion provides the pertinent legal framework, recognizing that jurisprudence interpreting La.R.S. 9:2800 indicates that a plaintiff seeking to hold a public entity liable for damages caused by a thing must prove: "(1) custody or ownership of the defective thing by the public entity; (2) the defect created an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation." Chambers v. Village of Moreauville, 11-898, p. 5 (La. 1/24/12), 85 So.3d 593, 597 (citations omitted).
In assessing the unreasonable risk of harm element, the supreme court has further instructed that courts must consider: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of *76 harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility, or whether it is dangerous by nature." Dauzat v. Curnest Guillot Logging Inc. , 08-0528, p. 5 (La. 12/2/08), 995 So.2d 1184, 1186-87 (citations omitted). See also Pryor v. Iberia Parish Sch. Bd. , 10-1683 (La. 3/15/11), 60 So.3d 594. I differ from the majority in the application of that framework to the ruling now under review.
In written reasons for judgment, the trial court stated:
In the instant case, the accident occurred on a clear, sunny day. The plaintiff testified that she was not distracted and was looking straight ahead at the time of the accident. The evidence and testimony of the plaintiff showed that prior to her falling on the section of sidewalk in question, she had to traverse another section of the sidewalk within feet of where she fell which contained irregularities. She did so without incident.... The evidence and testimony of witnesses called by the plaintiff showed that the missing piece of sidewalk was open and obvious. There were no shrubs or trees in close proximity to the sidewalk and there was a coloring differential between the sidewalk and the grass covered portion, alerting pedestrians to a deviation in the sidewalk. This court was given no measurements on the deviation or even whether there was concrete beneath the grass.
....
Furthermore, another factor relevant to the risk of harm in a sidewalk case is the number of years the defect existed relative to pedestrian traffic and the number of incidents reported. In this case, the sidewalk in question was in front of a high school, in a high traffic area and, plaintiff was the only reported person to have fallen on this piece of sidewalk. Additionally, the plaintiff testified that she did not notice the first piece of missing concrete, nor did she notice the second piece of missing concrete. According to her testimony, she was not distracted at the time of the accident.
Thus, the plaintiff would need to show that, even though open and obvious, the defective sidewalk was so unreasonably dangerous that she could not be expected to traverse it safely. The plaintiff testified that when she stepped onto the missing sidewalk, it shifted causing her to fall to the ground. The witnesses, those from the school and from the city who inspected the sidewalk, could not testify as to whether there was any loose concrete, only that the sidewalk was possibly sunken and covered with grass. This court finds that it is a reasonable expectation for plaintiff, once aware of the condition of the sidewalk, to be on notice and exercise a higher standard of care in traversing the next section of missing sidewalk safely. Public entities only have a duty to keep sidewalks in a reasonably safe condition for pedestrians exercising reasonable care, keeping in mind that irregularities exist in sidewalks.
Given witness testimony in this case, I find that the trial court's ruling is in keeping with the supreme court's ruling in Chambers , 85 So.3d 593. As noted by the majority, the supreme court explained in that case that municipalities must maintain sidewalks in a reasonably safe condition, but that a pedestrian must exercise ordinary care in traversing the sidewalk, "keeping in mind that irregularities exist in sidewalks." Id. at 598. Further, and in a case involving a similar factual background to this matter, the first circuit affirmed a summary judgment in favor of the municipality *77 where the plaintiff allegedly stepped in a "hole" on a sidewalk with "numerous areas where the concrete ha[d] shifted and fractured, resulting in cracks and crevices that extend[ed] the full depth of the sidewalk and, in some areas, expose[d] the underlying ground." Temple v. Morgan , 15-1159, p. 3 (La.App. 1 Cir. 6/3/16), 196 So.3d 71, 72, writ denied , 16-1255 (La. 10/28/16), 208 So.3d 889. The first circuit determined that the sidewalk's defective condition was open and obvious and, thus, did not present an unreasonable risk of harm.
Like the plaintiff in Temple , 196 So.3d 71, Cora testified that she had no explanation for failing to notice the condition of the sidewalk aside from looking forward as she walked. While the plaintiffs suggest that grass obscured the view of the sidewalk, Cora's testimony undermined that assertion as she responded as follows to questions by her attorney:
Q Did you notice that there was grass growing on the sidewalk?
A There were pieces of grass in various places in the cracks.
....
Q Do you recognize what that picture is showing?
A Yes, sir. That is where I fell.
Q Is that what it looked like on the day of the accident?
A No, sir. It had-it seemed like the grass was in various places, but there wasn't much grass.
Further, on redirect examination and in reference to a photograph of the area, the following exchange occurred:
Q Do you recall if that's what the-the area of the sidewalk looked like on the day of your accident?
A Yes, sir.
Q Did it have that much grass on it the day of your accident?
A No, sir.
That testimony concerning whether the sidewalk had less ground cover than evidenced in the photographs supports the trial court's ultimate finding that "[t]here were no shrubs or trees in close proximity to the sidewalk and there was a coloring differential between the sidewalk and the grass covered portion, alerting pedestrians to a deviation in the sidewalk." Accordingly, after review I find no manifest error in the trial court's determination that the condition of the sidewalk was open and obvious. In fact, the sidewalk's generally poor condition was such that it was observed by several witnesses prior to the incident, including City employees and those who worked in the area. I further point out that, in addition to hearing witness testimony regarding the sidewalk, the trial court viewed photographs of the sidewalk and its surroundings.
Neither would I disturb the trial court's ultimate conclusion regarding an unreasonable risk of harm analysis given the trial court's consideration of the risk-utility factors. The plaintiff focuses on the third factor, the cost of preventing harm. On that point, the trial court recognized the City's apparent lack of finances in relation to its high number of sidewalks in need of repair, stating that:
In addition, the representative from the [C]ity of Rayne testified that the condition of many of the sidewalks in the [C]ity were in need of repair from a storm in years past. The City was in the process of repairing the sidewalks with grant money they had received. However, the City was unable to repair all the sidewalks at the same time because the sheer cost of replacing all the damaged sidewalks was beyond the City's budget capabilities.
In this regard, Mark Daigle, the City's Director of Zoning, Planning, and Code *78 Enforcement testified regarding a 2013 grant received for sidewalk repair. However, he stated that the list of sidewalks in need of repair consisted of "close to 100" locations in the City and that, while the City requested a grant of $50,000.00, it was ultimately given $22,865.00 in August 2013. Mayor Roland Boudreaux explained that the award was not enough "to make a major difference." The City also set aside a portion of its general fund toward sidewalk repair that year, but the City still lacked adequate funding to repair each defective sidewalk, as Mayor Boudreaux estimated that it could have cost "in the hundreds of thousands, possibly a million dollars." When questioned whether "the [C]ity [had] the funds...to fix all the sidewalks in any particular year[,]" Mayor Boudreaux responded: "Absolutely not."
For this reason, according to Mayor Boudreaux, the City established a priority list for repairing the sidewalks, first addressing areas used by the elderly and the disabled, then turning to commercial areas and churches. The City maintained that it was in the process of prioritizing the sidewalks to be repaired when the accident occurred, approximately three months after the August 2013 grant. Mayor Boudreaux testified that he visited the sidewalk shortly after the accident and noted "an elevation difference" near the water meter but he could not recall whether any concrete was missing or loose. He confirmed that there "were definitely deficiencies," but further explained that "they weren't the worst ones."
The trial court's evaluation of such testimony must not be discounted, as the supreme court has stated that, "[a]s part of the cost analysis, the physical and financial inability of a municipality to maintain its things in anything more than a reasonably safe condition has been considered by this Court as a factor in determining whether such condition creates an unreasonable risk of harm." Chambers , 85 So.3d at 600. Significantly, courts should consider "not only the cost to fix the instant deviation, but also all similar deviations." Id. My appreciation of the trial court's ruling indicates that it complied with that directive and that, in turn, the record supports its determination as to that factor.
While my conclusion that the trial court did not manifestly err in finding that the plaintiffs failed to demonstrate an unreasonable risk of harm pretermits review of the merits of the remaining assignments, I make one final observation regarding the plaintiffs' argument before the court. The plaintiffs suggest in their first assignment that the trial court erred in failing to determine that the City had actual or constructive notice of the "defect[.]" The plaintiffs do so by imputing notice to the City given its memorandum statement that it "had actual notice of the sidewalk since this was one of the sidewalks which was in position to be repaired with the grant money in the year in question." However, in the analysis of the unreasonable risk of harm element and the issue of whether the condition was open and obvious, the plaintiffs further particularize the "defect" as "the uneven, sunken and loose concrete hidden under the grass covering the sidewalk." In my opinion, such a narrowing of the identity of the "defect" from the overall poor condition, as pertinent to the notice element, to the identity of the particularized "defect" in the unreasonable risk of harm element, results in an inconsistency in application of the elements of La.R.S. 9:2800. Given my above-stated determination regarding the latter element, I do not further discuss the issue of actual or constructive notice.
For these reasons, I respectfully dissent.