# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 25-612

CYNTHIA BOZEMAN

VERSUS

GOLDEN NUGGET LAKE CHARLES, LLC

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2022-2187
HONORABLE BOBBY LYNN HOLMES, JR., DISTRICT JUDGE

**********

## GUY E. BRADBERRY
## JUDGE

**********

Court composed of Sharon Darville Wilson, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Christopher C. McCall**
**Baggett McCall, L.L.C.**
**P.O. Box 7820**
**Lake Charles, LA 70606-7820**
**(337) 478-8888**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **Cynthia Bozeman**

**Murphy Joseph Burke, III**
**Nicholas O. Zotti**
**Leroy Carter, III**
**Litchfield Cavo LLP**
**1261 West Causeway Approach, Suite 200**
**Mandeville, LA 70471**
**(985) 869-8700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Golden Nugget Lake Charles, LLC**

**Kyle M. Beasley**
**Plauche, Smith & Nieset, L.L.C.**
**P.O. Drawer 1705**
**Lake Charles, LA 70602**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Golden Nugget Lake Charles, LLC**

**BRADBERRY, Judge.**

Defendant, Golden Nugget Lake Charles, LLC (Golden Nugget), appeals the judgment of the trial court in favor of Plaintiff, Cynthia Bozeman, in the amount of $832,479.92. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of a trip and fall which occurred at the Golden Nugget Hotel and Casino located in Lake Charles, Louisiana. On June 10, 2021, Cynthia Bozeman was a guest at the casino when her shoe became caught on the edge of a rug, causing her to trip and fall. Mrs. Bozeman suffered from a broken wrist and back and hip pain as a result of the fall.

Mrs. Bozeman filed a Petition for Damages on June 14, 2022, against Golden Nugget, alleging negligence and requesting damages. A bench trial was held on July 9, 2025, and judgment was rendered July 22, 2025. The trial court ruled for Mrs. Bozeman and awarded the following damages: (1) medical expenses in the amount of $32,479.02; (2) general damages in the amount of $500,000.00; and (3) loss of enjoyment of life in the amount of $300,000.00. Golden Nugget now appeals.

## ASSIGNMENTS OF ERROR

1. The trial court erred in applying Louisiana Revised Statutes 9:2800 and in finding GNLC to be a public entity.

2. The trial court erred in finding GNLC liable under Louisiana Revised Statutes 9:2800.6 because Judge Holmes in light of evidence showing GNLC reasonabl[y] placed the caution sign in front of the rippled edges of the rug, and that Plaintiff and her husband passed the sign and the open-and-obvious ripples in the rug.

3. The trial court erred in awarding abusively high damages for loss of enjoyment of life and pain and suffering.

## LAW AND DISCUSSION

*I.      Standard of Review*

"In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety." *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592, p. 8 (La. 12/8/15), 193 So.3d 1110, 1115.  An appellate court cannot overturn the trial court merely because it would have decided the case differently. *Id.*  Rather, "the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong." *Id.* at 1116.

The appellate court must look at the entirety of the record to determine whether the trial court was manifestly erroneous. *Id.*  The issue for the appellate court is whether the factfinder's conclusion was reasonable. *Id.*  Great deference is given to the trial court's findings "because it observes and participates in the live presentation, while the appellate court merely reviews the cold transcript." *Id.* at 1116–17.

However, "[w]hen a legal error arises from the erroneous application of a law, appellate courts utilize a *de novo* standard of review on appeal." *Carranza v. Carranza*, 18-971, p. 6 (La.App. 3 Cir. 6/5/19), 276 So.3d 1028, 1033.

*II.      Did the trial court apply the wrong legal standard?*

Golden Nugget first argues that the trial court erred by applying La.R.S. 9:2800, rather than La.R.S. 9:2800.6.  Consequently, it is Golden Nugget's contention that the appellate review in this case should be *de novo*.

2

Louisiana Revised Statutes 9:2800 sets forth the law on premises liability against a public entity. It states, in pertinent part: "A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody." La.R.S. 9:2800(A).

> Under La. R.S. 9:2800, in order to prove a public entity is liable for damages caused by a thing, the plaintiff must establish: (1) custody or ownership of the defective thing by the public entity; (2) the defect created an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation.

*Chambers v. Village of Moreauville*, 11-898, p. 5 (La. 1/24/12), 85 So.3d 593, 597.

Louisiana Revised Statutes 9:2800(G)(1) defines a public entity as:

> [T]he state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions. Public entity also includes housing authorities, as defined in R.S. 40:384(15), and their commissioners and other officers and employees and sewerage and water boards and their employees, servants, agents, or subcontractors.

The parties agree that Golden Nugget is not a public entity. The law applicable in this case is La.R.S. 9:2800.6, which defines the burden of proof against merchants in premises liability claims. Louisiana Revised Statutes 9:2800.6 states:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

3

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

After the completion of the bench trial, the trial court issued an oral ruling from the bench. In determining liability, he stated that he relied on La.R.S. 9:2800 and cited the supreme court's analysis in *Chambers*, 85 So.3d 593, a case about premises liability against a public entity. Judgment was signed on July 22, 2025. Golden Nugget timely filed a request for written reasons on July 29, 2025. Thereafter, the trial court issued written reasons and judgment on November 4, 2025.

In its written reasons, the trial court correctly applied La.R.S. 9:2800.6, finding Golden Nugget was a merchant and determining that it was liable for damages resulting from Mrs. Bozeman's fall. "In all appealable contested cases, other than those tried by a jury, the court when requested to do so by a party shall

4

give in writing its findings of fact and reasons for judgment[.]" La.Code Civ.P. art. 1917(A). It is well-settled that a trial court's reasons for judgment do not form part of the judgment. *Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586 (La. 4/1/11), 61 So.3d 507. However, they are an "explication of the trial court's determinations[,]" and the appellate court is "entitled to use those reasons to gain insight into the district court's judgment." *Id.* at 572.

"It is well established that at his discretion, a trial judge may sign a judgment based on written reasons which differ substantially from previously stated oral reasons." *Sanford v. Sanford*, 468 So.2d 844, 845 (La.App. 1 Cir. 1985). The trial court clearly applied the correct law, La.R.S. 9:2800.6, when it found Golden Nugget liable in its written reasons for judgment. As such, this assignment lacks merit. The trial court did not commit legal error, and we will proceed under a manifest error review.

## II. Liability

Golden Nugget next complains that the trial court erred in finding it liable under La.R.S. 9:2800.6. The Louisiana Supreme Court in *White v. Wal-Mart Stores, Inc.*, 97-393, p. 4 (La. 9/9/97), 699 So.2d 1081, 1084–85 (alterations in original), discussed the requirements of La.R.S. 9:2800.6, stating:

> The requirement of Section (B)(2) is that the merchant created or had actual or constructive notice of the condition prior to the occurrence. That is clear and unambiguous. Constructive notice, at issue here, is defined by Section (C)(1). The definition is likewise clear and unambiguous. There is a temporal element included: "such a period of time . . ." The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall. A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden.

Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time . . . " Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.

Billy Alex, Golden Nugget employee who worked as a floor porter, testified that he vacuumed the rug seven to eight times a day. He stated that the ripples on the rug caused the rug to not lay flat in a manner where someone could catch their foot and trip. Mr. Alex testified that the rug was in this condition the entire time he was employed at the Golden Nugget from 2019 through 2021. The incident involving Mrs. Bozeman occurred in June 2021. In fact, Mr. Alex testified that he stumbled over the rug a number of times and that other customers complained about the rug also. When asked about the frequency of these complaints, Mr. Alex estimated that customer complaints occurred twice per day.

Mr. Alex further testified that the rug did not have a purpose and that, while he worked there, the Golden Nugget never put up cones, caution tape, or roped the area off to warn people of the hazard.

Rochelle Syas was Billy Alex's supervisor at the Golden Nugget. She also testified that the rug was not laying flat and had a lot of ripples in it on the day of the incident. She testified that Golden Nugget eventually removed the rug from the area.

The trial court found that the rug created an unreasonable risk of harm. In addition to the testimony of Mr. Alex and Ms. Syas, the trial court viewed the surveillance video from the incident which shows the condition of the rug at the time

of the incident. Additionally, the court stated in its written reasons that "while viewing the surveillance footage[,] another patron tripped on the ripples in the rug."

The trial court also found that the Golden Nugget had constructive notice of the condition of the rug based on the testimony of two of its employees and the need for the rug to be serviced regularly. The trial court found that the risk of harm was foreseeable.

In its written reasons, the trial court concluded:

> Finally, the Court finds that the Golden Nugget failed to exercise reasonable care when it failed to either remove or reposition the rug. Testimony of the Golden Nugget employees made it abundantly clear that the ripples in the rug had been an ongoing issue and at some point, they subsequently removed the rug from the floor. Mr. Alex testified that the ripples created a tripping hazard.

Golden Nugget argues that the surveillance video shows a caution sign placed in the vicinity of the rugs. Ms. Syas testified that it was a caution sign or wet floor sign. It is unclear from the video what the sign says. There are two rugs, and the sign is placed in between the rugs. It is a brown sign and not the typical bright yellow caution sign which would draw a person's attention. Given the evidence, we cannot say the trial court manifestly erred when it found Golden Nugget failed to exercise reasonable care when it failed to remove the rug.

Based on the entirety of the evidence, we do not find the trial court manifestly erred in finding Golden Nugget liable to Mrs. Bozeman under La.R.S. 9:2800.6. This assignment lacks merit.

*III. Damages*

Lastly, Golden Nugget complains that the trial court abused its discretion when it awarded general damages and loss of enjoyment of life in the amount of $800,000.00 to Mrs. Bozeman.

7

The definition of general damages and what items should be considered in assessing general damages was set forth in *Morgan v. Willis-Knighton Medical Center,* 456 So.2d 650, 658 (La.App. 2 Cir. 1984), as "those which may not be fixed with pecuniary exactitude; they instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification, or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms." *See also Sayre v. PNK (Lake Charles), LLC*, 15-859 (La.App. 3 Cir. 3/23/16), 188 So.3d 428, *writ denied*, 16-696 (La. 6/28/16), 192 So.3d 780. General damages "are inherently speculative in nature and cannot be fixed with mathematical certainty." *Bourg v. Cajun Cutters, Inc.*, 14-210, p. 21 (La.App. 1 Cir. 5/7/15), 174 So.3d 56, 70, *writs denied*, 15-1253, 15-1306 (La. 4/4/16), 190 So.3d 1205, 1201.

"Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompanies an injury." *McGee v. A C and S, Inc.*, 05-1036, p. 5 (La. 7/10/06), 933 So.2d 770, 775. Loss of enjoyment of life is defined as "detrimental alterations of the person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed before the injury." *Id.*

"In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." La.Civ.Code art. 2324.1. Since the trier of fact "is in the best position to evaluate witness credibility and see the evidence firsthand, it is afforded much discretion in independently assessing the facts and rendering an award." *Bourg*, 174 So.3d at 70.

In reviewing a general damages award for excessiveness, the appellate court must determine whether the trial court "abused its discretion in assessing the amount of damages." *Jones v. Market Basket Stores, Inc.*, 22-841, p. 16 (La. 3/17/23), 359

So.3d 452, 464. "Reasonable persons frequently disagree about the measure of general damages in a particular case." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993). An appellate court should only increase or decrease a general damages award when it is "beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances." *Id.*

In *Barber Brothers Contracting Co., LLC v. Capital City Produce Co., LLC*, 23-788, pp. 4–5 (La. 12/19/24), 397 So.3d 404, 408 (alterations in original), the supreme court explained:

> General damage awards must not be "obviously the result of passion or prejudice, and they [should] bear a reasonable relationship to the elements of the proved damages." *Youn*, 623 So.2d at 1261. "To reduce the trier of fact's award, [a reviewing court] must conclude from the entirety of the evidence viewed in the light most favorable to the plaintiff, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those 'exceptional cases where such awards are so gross as to be contrary to right reason.'" *Davis v. Hoffman*, 00-2326, p. 3 (La. App. 4 Cir. 10/24/01), 800 So.2d 1028, 1030 (quoting *Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 331 (5th Cir. 1987); *see also Youn*, 623 So.2d at 1261. In summary, to find abuse of discretion warranting the disturbance of a factfinder's award of general damages, a reviewing court must find that the award is "so high or so low in proportion to the injury . . . that it shocks the conscience." *Baack v. McIntosh*, 2020-1054 (La. 6/30/21), 333 So.3d 1206, 1215 (quoting *Riley v. Maison Orleans II, Inc.*, 01-0498, p. 11 (La. App. 4 Cir. 9/25/02), 829 So.2d 479, 487).

In the present case, the trial court awarded Mrs. Bozeman $500,000.00 in general damages and another $300,000.00 for loss of enjoyment of life for a total of $800,000.00 in general damages. Mrs. Bozeman was also awarded special damages in the amount of $32,479.92 for medical expenses she incurred as a result of the incident. Golden Nugget argues that the general damages awarded by the trial court are excessive.

9

The record shows that Mrs. Bozeman suffered from a shattered wrist, also known as a Colles fracture, as a result of the fall. The radial bone was displaced, and her husband Oscar testified that her wrist was crooked and described it as deformed and in an unnatural position. Mrs. Bozeman described it as extremely painful. She testified that the pain from the fracture was "very, very bad" and that she was practically screaming in pain.

Mrs. Bozeman's medical treatment included an open reduction internal fixation right distal radius surgery in order to fuse the wrist back together. She has a plate and nine screws permanently embedded in her wrist for the rest of her life. Dr. George, Golden Nugget's expert witness, explained it is possible that Mrs. Bozeman may need additional surgery, for example if a screw comes loose or in the case of infection.

In addition to the surgery, Mrs. Bozeman also received therapy at the Cleveland Physical and Occupational Therapy Clinic. The clinic's medical records indicate that Mrs. Bozeman complained of difficulty carrying light items; difficulty performing household management activities; difficulty with gripping; difficulty with grooming; difficulty with job specific tasks; numbness; stiffness; swelling; tingling; and weakness in her wrist. At the time of trial, Mrs. Bozeman stated that there had not been a lot of improvement with these issues. Mrs. Bozeman also received pain management care and injections as part of her medical treatment.

Dr. Fedoriw, Mrs. Bozeman's treating physician, testified that she will continue to have problems and limitations for the rest of her life. He stated, "Anybody that – that sustains this type of injury in their – in their eighties, it's almost for sure you're not going to have a complete recovery." He further testified that Mrs. Bozeman had grip and strength issues and had pain when lifting objects. Mrs.

Bozeman continued to have back and hip pain as well as the wrist injury due to the fall.

At trial, Mr. Bozeman also testified. He stated that she slowed down after the fall and is not able to do the same amount of household chores such as ironing, sewing, cooking, and washing dishes. She has difficulty texting. Mr. Bozeman now does most of those things. Mrs. Bozeman enjoyed gardening prior to the accident and is no longer able to garden. Mr. Bozeman testified that she no longer wants to go out as much. She often drops things such as coffee cups and bowls due to weakening of her wrist. Mrs. Bozeman compensates for her injury by attempting to use her left non-injured hand. Her husband and granddaughter had to help her get dressed for a time after the surgery. They also had to help her bathe.

Mr. Bozeman owns two restaurants, and Mrs. Bozeman did several managerial and human resources tasks for the restaurant prior to the fall, which she is no longer able to do. They have had to seek additional help for the restaurant in order to complete those tasks. The trial court noted that "[Mrs. Bozeman] has been affected in a significant way."

Mrs. Bozeman cites the court to *Matthews v. Ferrer*, 95-266 (La.App. 4 Cir. 11/30/95), 665 So.2d 1211, as a case similar in injury and general damages. In *Matthews*, the plaintiff tripped and fell, causing a Colles fracture to her wrist. When assessing damages, the appellate court explained:

> The break in Mrs. Matthews' right wrist was not a simple fracture but was a more severe "Colles" type comminuted displaced fracture. The end of the radius bone was broken into a number of pieces. Thus, it was not sufficient to merely place the wrist in a cast. Instead, metal pins had to be inserted in Mrs. Matthews' arm so that the bones would heal properly. This procedure required general anesthesia. Some weeks later, these metal pins had to be removed.

*Id.* at 1216.

We note that Mrs. Bozeman did not have the metal pins removed. She has a plate and nine screws that are permanently embedded in her wrist, leaving her at risk for infection and future surgery.

The court in *Matthews* went on to explain that the plaintiff suffered great pain at the time of the fall from the fracture of her wrist and for weeks thereafter. The fracture left her unable to care for herself, and her sisters had to care for her for several weeks after the accident. The plaintiff also had contusions on both knees as a result of the fall.

The appellate court in *Matthews* upheld a general damages award of $380,000.00 for the plaintiff's injuries. Adjusted for inflation as of the July 2025 trial date in the present case, using the U.S. Bureau of Labor Statistics Consumer Price Inflation Calculator[1], the value of this award was approximately $800,000.00.

We find *Matthews* to be so similar to the present case as to be instructive. Using *Matthews* as a guide, we cannot find the general damages award to be so excessive that it shocks the conscience. Considering the facts of this case and *Matthews*, we find no abuse of discretion in the trial court's award of damages for general damages and loss of enjoyment of life.

## DECREE

The judgment of the trial court is affirmed. Costs of this appeal are assessed to Defendant Golden Nugget Lake Charles, LLC.

**AFFIRMED.**

---

[1] CPI Inflation Calculator is located at https://www.bls.gov/data/inflation.calculator.htm.